IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA

MICHEAL L. McLAUGHLIN,

   PLAINTIFF;

v.

ALASKA SUPREME COURT, ET. AL.,

   DEFENDANTS.

RECEIVED
DEC 14 2010
CLERK, U.S. DISTRICT COURT
ANCHORAGE, A.K.

## APPENDIX A
### VOLUME I

AFFIDAVIT OF MICHEAL L McLAUGHLIN, proper
INITIALLY FILED ON DECEMBER 18, 2008
STATE v. McLAUGHLIN, 3HO-S06-506 Cr.,

c/o HUDSON CORRECTIONAL FACILITY
200 North JUNIPER STREET
HUDSON, COLORADO -80642-

IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

THIRD JUDICIAL DISTRICT AT ANCHORAGE

| | |
|---|---|
| STATE OF ALASKA ) | |
| Plaintiff; ) | |
| v. ) | |
| MICHEAL L. McLAUGHLIN, ) | |
| Defendant. ) | |
| ) | Case No.# 3HO-S06-506 CR., |

### A F F I D A V I T

**COMES NOW** the defendant, Micheal L. McLaughlin, appearing in a limited capacity as In Properia Persona to **SWEAR** and **AFFIRM** that;

1) I am the defendant in the above captioned matter whom seeks to now bring, and is the author of, the pleading entitled; RENEWED JUDICIAL CHALLENGE FOR CAUSE -- A.S. 22.20.020.

2) That I had also authored and proffered, by and through counsel, the intial JUDICIAL CHALLENGE FOR CAUSE -- A.S. 22.20.020 which was filed on or about May 2, 2008. (Appendix A)

3) That the factual basis of the initial challenge was predicated largely upon Judge Murphy's denial of Mclaughlin's right to be trial on every element of the offense charged. (Appendix A, pp. I - III)

4) That the initial challenge was also founded upon the fact that Judge Murphy had been exposed to an inflamatory and exagerated pre-sentence report prior to that stage of the proceeding where a finding going to guilt or innocence was no longer possible. (Appendix A, pp. III, IV)

Micheal L. McLaughlin, pro per
c/o Wildwood Pretrial Facility
5 Chugach Ave.,
Kenai, Alaska 99611

5) That McLaughlin brings the renewed challange which re-opens the issues concerning Judge Murphy's repeated refusals to allow him to offer any sort of meaningful defense to the prior conviction element of the offense charged.

6) That Mclaughlin also brings the renewed challange based upon what appears to be the Homer court's complicit conduct in matters surrounding the theft of his petition seeking a writ of habeas corpus after it had left the Wildwood Pretrial Facility (WPTF).

7) That the central material issues disputed in all of these matters revolve around the same set of allegations involving serious prosecutorial misconduct which would qualify as felony offenses under Alaska law.

8) That the current prosecutor in this case, Jean E. Seaton, was then, and is now, an attorney working out of the same district attorney's office which is alleged to have engaged in said misconduct.

9) That Mclaughlin attempted his first filing of the petition seeking a writ of habeas corpus concerning these same allegations on or about September 29, 2008. (Exhibit A)

10) That Mclaughlin took such measures as a dilligent response to Judge Murphy's Septmeber 18, 2008 order which foreclosed all other requests for relief.

11) That this decision was further based upon Judge Murphy's latest ruling where it would require Mclaughlin to forward his claims of jurisdictional defect in a format prescribed by Brockway v. State, 37 P.3d 427 (App 2001).

12) That Judge Murphy's order of September 18, 2008 stated concerning the subject that, "...McLaughlin has failed to provide anything other than an unsupported assertion that the evidence of his prior conviction submitted to the

grand jury was flawed. This court has rejected Mclaughlin's unsupported assertion. In addition, the court has found that the prior conviction was proved beyond a reasonable doubt at trial..."

13) That in regards to this finding, Judge Murphy has been aware of, and has refused to hear in any form, the objective evidence offered in the form of public records and the testimony of state officials that would have objectively then supported Mclaughlin's assertions.

14) That instances of this ongoing pattern of prejudicial conduct first occurred when Judge Murphy summarily refused to, "..get that far into the facts.." during the aborted bench trial held on April 26, 2007 concerning the final element of the offense charged. (Audio CD, April 26, 2007 -- Appendix A, pp. I-III)

15) That based upon the State's erroneous assertions at the time concerning the provisions of A.S. 12.55.145 and a prior conviction merely being a "...sentence enhancing factor.." Mclaughlin then filed a pro se NOTICE OF DENIAL OF A PRIOR CONVICTION on or about July 9, 2007, A.S. 12.55.145(c) and (d).

16) That this document contained a detailed summary of the public records, testimony of state officials, and other evidence which had initially been offered by the state in that contested prior proceeding that would clearly, convincingly, and objectively support Mclaughlin's instant claims.

17) That Judge Murphy's September 18th order not only foreclosed all previous relief sought, it was also directed at prospectively foreclosing rights to bring these same allegations in accordance with this separate and distinct statutory procedure, which served a separate and distinct statutory purpose going specifically towards the sentencing process, A.S. 12.55.145(c) and (d).

18) That this same statutory procedure had previously been touted by State's counsel as the appropriate procedure in lieu of granting Mclaughlin the right to be heard at the aborted bench trial of April 26, 2007 in pleadings that were subsequently filed by the state. (Appendix A, pp. II, III)

19) That this game of cat and mouse also included foreclosure on Mclaughlin's attempt to seek a dismissal of the indictment based upon the same factual basis and alleging jurisdictional defect where the prior conviction at issue is, in and by itself, an entire element of the offense charged.

20) That this avenue of relief had likewise previously been offered as an appropriate surrogate to Mclaughlin's trial right by state's counsel in the pleading entitled; RESPONSE TO MOTION TO RECONSIDER, dated May 17, 2007, pp. 2.

21) That Judge Murphy's ruling of September 18th was drafted as a response to a defense request that the court reserve judgment on all of these matters where Mclaughlin was entitled to present relevant facts in accordance with the procedure prescribed in A.S. 12.55.145(d) at the sentencing hearing anyhow.

22) That upon information and belief, Mclaughlin's first attempt to file his petition seeking a writ of habeas corpus left WPTF via the United States Postal Service on or before October 6, 2008. (Exhibit(s) A and B)

23) That this parcel and it's contents were addressed to, and intended for, the Kenai superior court in Kenai, Alaska. (Exhibit(s) A and C)

24) That McLaughlin first became aware that there was a problem with the filing on October 16, 2008 when he spoke with "Angie" at the civil clerk's office in Kenai. (See; RENEWED...CAUSE, Facts No.# 19-22)

25) That Mclaughlin began his efforts at a surrogate filing, and a proper investigation of this matter, the following week of October 20, 2008.

(Exhibit(s) D, F, and P-1, P-2)

  26) That "Exhibit G" is an example of how documents are treated by the Kenai clerk's office in cases of deficiency, where in this instance Mclaughlin had omitted information on page two of this motion during the surrogate filing.

  27) That this style of stamp appears no where on any of the documents thus far provided to Mclaughlin from the file that was generated by the Homer clerk, <u>Mclaughlin v. State</u>, 3HO-08-249 CI.. (Exhibit(s) M-1, N-4, and Q)

  28) That upon information and belief, the Kenai civil clerk never did recieve or handle any of the documents contained within the Homer file.

  29) That upon information and belief, Mclaughlin's first parcel of documents had been intercepted by person or persons unknown when in route between WPTF and the civil clerk's office in Kenai sometime between October 6th and October 10, 2008. (Exhibit(s) A, B, and M-1)

  30) That the surrogate filing which Mclaughlin made on October 21st, only took two days to reach the same destination in Kenai. (Exhibit(s) F, G, and P-1, P-2)

  31) That upon information and belief, the Homer court recieved the first parcel surreptitiously on or about October 14, 2008. (Exhibit(s) M-1, M-2)

  32) That Mclaughlin has since made several inquiries seeking further information from the Homer clerk's office regarding the facts and circumstances as they relate to these procedural oddities. (Exhibit(s) H, and N-1, N-2)

  33) That these efforts include a written records request on December 1, 2008 in which Mclaughlin provided funds according to the fee schedule so as to retrieve documents from the Homer case file. (See similiarly; Exhibit(s) O)

  34) That none of the requests which have been directed to the Homer

clerk's office have been responded to as of the time upon which this affidavit was drafted.

35) That it was during the October 28th appearance that Mclaughlin first learned of the whereabouts of his missing property. (Audio CD, Oct., 28th)

36) That Mclaughlin requested that his property be returned to him at that time, a request he also proffered in writing again later that same day. (Exhibit H)

37) That in the course of his investigations, and after having obtained additional signature bearing documents, Mclaughlin discovered other circumstances warranting a second look at his findings in the interests of truth and accuracy.

38) That upon further investigation, Mclaughlin's intuition in this matter again proved correct and also then lent credibility to the remainder of his findings as they related to teh staff at WPTF. (Exhibit E)

39) That these newly acquired facts seemed to confirm Mclaughlin's previous conclusions that whatever had occurred which resulted in the first parcel having ended up in Homer, occurred AFTER that parcel left WPTF.

40) That on October 6, 2008 Judge Huguelet dismissed the Kenai case number indicating that, "...the above matter has already been filed in Homer..." (Exhibit I)

41) That this fact appears as an oddity where the Homer case number was not officially "filed" with that court until SIX WEEKS later on Novemebr 25, 2008. (Exhibit(s) J, and M-1, M-2, M-3)

42) That unaware of this circumstance, Mclaughlin authored a second letter to Judge Murphy directly renewing his request for the return of his property as the court's actions were no effectively impeding his access to another court. (Exhibit K)

43) That this same letter also renewed defense counsel's request for a copy of the October 28th audio CD whereby it was need for the purposes of drafting the instant judicial challenge. (Exhibit K, Audio CD, November 17, 2008)

44) That on November 11, 2008 Mclaughlin filed a motion to reconsider under the Kenai case number premised upon the fact that the court had erred where a district court (Judge Murphy's court) lacked jurisdiction to hear an action for habeas corpus. (Exhibit(s) L-1 through L-5)

45) That as part of that process, Mclaughlin also served the Homer court with a copy of that pleading as a PARTY IN REAL INTEREST by virtue of Judge Huguelet's inexplicable findings. (Exhibit(s) I, and L-1)

46) That on Friday, November 14th defense counsel, without the benefit of having recieved the requested audio CD related to the October 28th hearing, fax filed the instant judicial challenge for cause.

47) That the parties again appeared on November 17th in Homer, and Mclaughlin inquired a fourth time concerning his request for the return of his property. (Audio CD, November 17, 2008)

48) That during this proceeding, Judge Murphy's remarks seemed to be directed a convincing Mclaughlin that he had misunderstood the court's actions of October 28th.

49) That Judge Murphy then specifically told Mclaughlin that she had given the file to Judge Huguelet.

50) That Judge Murphy then specifically told Mclaughlin that her court lacks jurisdiction to here the claims brought in that petition. (Exhibit M-3)

51) That Mclaughlin then pursued the matter no further where he then reasonably construed these comments in the light of his pending request before the

Kenai court seeking reconsideration of the dismissal order which was still time active before Judge Huguelet.

52) That Judge Murphy's November 18, 2008 ORDER DENYING....FOR CAUSE contains several representations concerning her prior actions, and her knowledge as to the basis of Mclaughlin's petition, which seem in sharp contrast to the October 28th record.

53) That prominent among these is the court's statement that, "..[m]y involvement with the civil case was limited to ruling on the request for exemption from filing fees..." (ORDER DENYING...FOR CAUSE, id., at pp. 4, Audio CD-October 28, 2008, Exhibit M-2)

54) That after the November 17th hearing Judge Murphy ordered that Jail Services return Mclaughlin to WPTF pending further proceedings.

55) That Mclaughlin was not transported back to WPTF, but was left at the Homer jail.

56) That this circumstance significantly effected Mclaughlin's ability to meaningfully participate in the investigatory effort.

57) That this circumstance also had a negative effect on an ability to otherwise then prepare for the next hearing where Mclaughlin has always played a significant role in his defense.

58) That on November 25, 2008 Mclaughlin again appeared before the Homer court, and was served with "Exhibit(s) M" just prior to that proceeding.

59) That these documents have been properly identified as part of the first (diverted) legal parcel indicated in "Exhibit(s) A, B, and C" which are now apparently filed under the Homer case number. (Exhibit M-1)

60) That these documents indicate, in sharp contrast to Judge Murphy's remarks and assurances on the November 17, 2008 record, that this file has now been "assigned" to her specifically. (Exhibit M-1)

61) That this same set of documents also inexplicably bears the signature of Judge Huguelet, and in fact, appear to have been altered in some way to effect that circumstance. (Exhibit M-2)

62) That on November 30, 2008 Mclaughlin then filed a set of "notices" under Civil Rule 42(c), along with a lengthy objection and another request for clarification concerning these various official misrepresentations, with the Homer court. (Exhibit(s) N-1 through N-4, and Exhibit Q)

63) That the substance of this objection, aside from the utter confusion created by these various procedural antics, is that the actions occurring before the Homer court have irreparaably harmed and prejudiced Mclaughlin whereby his original September 29th effort would now have been procedurally well under way. (Exhibit N-2)

64) That this circumstance is a direct result of Judge's Murphy's clear unwillingness to return Mclaughlin's property to him, upon lawful request brought in a timely fashion, which would have allowed him to seek relief in another court.

65) That the substance of this petition seeking a writ of habeas corpus is substantially premised upon the same matters Judge Murphy has refused to hear.

66) That in all matters related to this petition seeking a writ of habeas corpus, and the other collateral matters that Mclaughlin currently has pending which are directed at effecting a lawful remedy concerning these same material issues, I have been otherwise duly dilligent as the circumstance permit.

67) That this renewed judicial challenge for cause was brought in a good faith attempt to preserve rights afforded and secured, and is in no way intended to harass or aggrieve any party or to cause undue or prejudicial delay.

68) That the foregoing statements are true and correct to the best of my knowledge, belief, and/or recollection of the events depicted herein as it may be applicable to any given matter alluded to herein.

FURTHER YOUR AFFIANT SAYETH NAUGHT    !!!!!

**SWORN TO** this the ___17th___ of ___December___, 2008 at Kenai, Alaska.

_____
Micheal L. McLaughlin
In Properia Persona
Affiant

**SUBSCRIBED** and **SWORN** before me this the ___17th___ of ___Dec___, 2008 at Kenai, Alaska.

_____
Notary Public/State of Alaska

(seal)

My commission expires; w/office